Vanessa R. Waldref
United States Attorney
Eastern District of Washington
Caitlin Baunsgard
Assistant United States Attorney
Post Office Box 1494
Spokane, WA 99210-1494
Telephone: (509) 353-2767

FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

DEC 1 2 2023

SEAN F. McAVOY, CLERK
_____ DEPUTY
SPOKANE, WASHINGTON

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF WASHINGTON

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) 2:23-CR-0045-RMP |
| | ) |
| v. | ) |
| | ) PLEA AGREEMENT |
| AMY KATHERIN RIGGS, | ) |
| | ) |
| Defendant. | ) |
| | ) |

Plaintiff United States of America, by and through Vanessa R. Waldref, United States Attorney for the Eastern District of Washington, and Caitlin Baunsgard, Assistant United States Attorney for the Eastern District of Washington, and Defendant, AMY KATHERIN RIGGS ("Defendant"), both individually and by and through Defendant's counsel, Matthew Duggan, agree to the following Plea Agreement:

1. <u>Guilty Plea and Maximum Statutory Penalties</u>:

Defendant agrees to enter a plea of guilty to the Indictment filed on April 18, 2023, charging Defendant with Conspiracy to Distribute 500 Grams or More of Methamphetamine and 400 Grams or More of Fentanyl, in violation of 21 U.S.C. § 846, a Class A felony.

Defendant understands the following potential penalties apply:

PLEA AGREEMENT - 1

    a.    a term of imprisonment of not less than 10 years up to a life term;

    b.    a term of supervised release of not less than 5 years and up to a lifetime;

    c.    a fine of up to $10,000,000;

    d.    denial of federal benefits; and

    e.    a $100 special penalty assessment.

2. <u>Supervised Release</u>:

Defendant understands that if Defendant violates any condition of Defendant's supervised release, the Court may revoke Defendant's term of supervised release, and require Defendant to serve in prison all or part of the term of supervised release authorized by statute for the offense that resulted in such term of supervised release without credit for time previously served on post-release supervision, up to the following terms:

    a.    5 years in prison if the offense that resulted in the term of Supervised Release is a class A felony,

    b.    3 years in prison if the offense that resulted in the term of Supervised Release is a class B felony, and/or

    c.    2 years in prison if the offense that resulted in the term of Supervised Release is a class C felony.

Accordingly, Defendant understands that if Defendant commits one or more violations of supervised release, Defendant could serve a total term of incarceration greater than the maximum sentence authorized by statute for Defendant's offense or offenses of conviction.

3. <u>Denial of Federal Benefits</u>:

Defendant understands that by entering this plea of guilty to Count 1, Defendant is no longer eligible for assistance under any state program funded under part A of Title IV of the Social Security Act (concerning Temporary Assistance for Needy Families) or benefits under the food stamp program or any state program carried out

PLEA AGREEMENT - 2

under the Food Stamp Act. 21 U.S.C. § 862a. Defendant also understands that the Court may deny Defendant's eligibility for any grant, contract, loan, professional license, or commercial license provided by an agency of the United States or by appropriated funds of the United States. 21 U.S.C. § 862.

  4. <u>Potential Immigration Consequences of Guilty Plea</u>:

If Defendant is not a citizen of the United States, Defendant understands the following:

  a. pleading guilty in this case may have immigration consequences;

  b. a broad range of federal crimes may result in Defendant's removal from the United States, including the offense to which Defendant is pleading guilty;

  c. removal from the United States and other immigration consequences are the subject of separate proceedings; and

  d. no one, including Defendant's attorney or the Court, can predict with absolute certainty the effect of a federal conviction on Defendant's immigration status.

Defendant affirms that Defendant is knowingly, intelligently, and voluntarily pleading guilty as set forth in this Plea Agreement, regardless of any immigration consequences that Defendant's guilty plea may entail.

  5. <u>The Court is Not a Party to the Plea Agreement</u>:

The Court is not a party to this Plea Agreement and may accept or reject it. Defendant acknowledges that no promises of any type have been made to Defendant with respect to the sentence the Court will impose in this matter.

Defendant understands the following:

  a. sentencing is a matter solely within the discretion of the Court;

  b. the Court is under no obligation to accept any recommendations made by the United States or Defendant;

PLEA AGREEMENT - 3

  c. the Court will obtain an independent report and sentencing recommendation from the United States Probation Office;

  d. the Court may exercise its discretion to impose any sentence it deems appropriate, up to the statutory maximum penalties;

  e. the Court is required to consider the applicable range set forth in the United States Sentencing Guidelines, but may depart upward or downward under certain circumstances; and

  f. the Court may reject recommendations made by the United States or Defendant, and that will not be a basis for Defendant to withdraw from this Plea Agreement or Defendant's guilty plea.

6. <u>Waiver of Constitutional Rights</u>:

Defendant understands that by entering this plea of guilty Defendant is knowingly and voluntarily waiving certain constitutional rights, including:

  a. The right to a jury trial;

  b. The right to see, hear and question the witnesses;

  c. The right to remain silent at trial;

  d. The right to testify at trial; and

  e. The right to compel witnesses to testify.

While Defendant is waiving certain constitutional rights, Defendant understands Defendant retains the right to be assisted through the sentencing and any direct appeal of the conviction and sentence by an attorney, who will be appointed at no cost if Defendant cannot afford to hire an attorney.

Defendant understands and agrees that any defense motions currently pending before the Court are mooted by this Plea Agreement, and Defendant expressly waives Defendant's right to bring any additional pretrial motions.

7. <u>Elements of the Offense</u>:

The United States and Defendant agree that in order to convict the Defendant of Conspiracy to Distribute 500 Grams or More of Methamphetamine and 400 Grams or

PLEA AGREEMENT - 4

More of Fentanyl, in violation of 21 U.S.C. § 846, the United States would have to prove beyond a reasonable doubt the following elements:

> *First,* beginning on a date unknown, but by January 2022 and continuing on to May 2022, in the Eastern District of Washington and elsewhere, Defendant entered into an agreement with one or more persons to commit the crime of distribution of 500 grams or more of methamphetamine or 400 grams or more of fentanyl, as charged in the Indictment;
>
> *Second,* Defendant became a member of the conspiracy knowing of at least one if its objects and intending to help accomplish it; and
>
> *Third,* the agreement was to distribute 500 grams or more of a methamphetamine or 400 grams or more of fentanyl, which would be reasonably foreseeable to her as a member of the conspiracy.

8. Statement of Facts and Stipulation:

The United States and Defendant stipulate and agree to the following: the facts set forth below are accurate; the United States could prove these facts beyond a reasonable doubt at trial; and these facts constitute an adequate factual basis for Defendant's guilty plea.

The United States and Defendant agree that this statement of facts does not preclude either party from presenting and arguing, for sentencing purposes, additional facts that are relevant to the Sentencing Guidelines computation or sentencing, unless otherwise prohibited in this Plea Agreement. The parties further agree and stipulate that this factual basis is simply a summary to support the plea, it does not contain all facts which could be proven by the United States.

The Drug Enforcement Administration ("DEA") has been investigating a drug trafficking organization with significant ties to the Eastern District of Washington. Various investigative methods were utilized, to include electronic surveillance, physical surveillance, trackers, search warrants, and witness interviews. Through that

PLEA AGREEMENT - 5

investigation, Defendant was identified as a serial facilitator of the organization's operations as well as one of its most prevalent drug customers.

*Organization Stash Houses*

Through the investigation, multiple "stash houses" for the organization were located in the Spokane, Washington area. One such stash house was located on Maxwell St., and in January 2022, a drug courier for the organization was caught exiting the stash house with approximately 30,000 fentanyl pills (3,538.8 grams), 189.9 grams of heroin, and $18,000 in U.S. Currency as well as a loaded firearm. That same day, another drug courier was caught leaving a stash house on the South Hill area of Spokane with approximately 2,351.6 grams of actual (pure) methamphetamine, 1,930 grams of fentanyl, and 2 loaded firearms.

In April 2022, another organization stash house was located in Spokane, on Nebraska Avenue. Physical and electronic surveillance revealed Defendant entering and exiting the stash house on multiple occasions. On several occasions, Defendant was observed leaving the stash house driving her Range Rover and surveilled away from the residence to meetings with individuals identified as drug users and engaging in activities consistent with distributing drugs. On one occasion, a traffic stop was conducted on the vehicle, and Defendant was identified as the driver. Based on the totality of the circumstances, Defendant's vehicle was seized in anticipation of a search warrant. Defendant requested her purse out of the vehicle and allowed law enforcement to search the purse before allowing her to leave with her purse. Inside the purse, law enforcement located approximately $13,000 in U.S. Currency[1].

During the execution of the search warrant, the vehicle was found to contain multiple bags, backpacks, and boxes in the rear portion of the vehicle which contained primarily women's clothing and personal items. In a "Michael Kors" brand backpack in that area of the vehicle, law enforcement located a loaded Rohm .22 caliber mini

---

[1] Defendant contends this money was post-tax casino winnings.

PLEA AGREEMENT - 6

revolver bearing serial number 645769. That backpack also contained paperwork with Defendant's name as well as a prescription bottle with a third party's name. There was also various paraphernalia for drug usage located throughout the vehicle.

On April 13, 2022, a search warrant was executed at the Nebraska Ave. stash house. Defendant was present at the location as were many of her belongings, to include clothing, shoes, a suitcase with Defendant's name, and a purse identical to the one found to contain $13,000 in U.S. Currency early that month. In Defendant's purse, law enforcement found a small amount of methamphetamine and ecstasy pills. In the living room common area, approximately ¼ pound of methamphetamine was located on the coffee table. Law enforcement also located two 9mm pistols hidden behind a false wall in the residence. A silver Nissan Murano (registered to Defendant per Washington State Department of Licensing records) was parked behind the residence in an alley at the time of the search warrant but was not searched.

In May 2022, an additional stash house was located in Spokane on Walnut St. Physical surveillance revealed the drug courier was utilizing a Lexus vehicle (registered to Defendant), to distribute drugs in the Spokane area.[2] The drug courier was contacted leaving the stash house with approximately 17.40 kilograms of methamphetamine, 9.45 kilograms of fentanyl, and 6 firearms.

*February 2022 Robbery*

On February 6, 2022, a drug courier for the organization was delivering approximately 15-20 pounds of methamphetamine and approximately 50,000 fentanyl-laced pills to a customer in the Spokane area. Ultimately, Brady BAUGHMAN robbed the drug courier of those controlled substances. The source of supply, living in Mexico, was almost immediately informed of this robbery, and solicited Defendant to obtain the drugs back. One of the organization's other co-conspirators who was present when the robbery occurred, advised the source in

---

[2] Defendant contends she did not have an ownership interest in the vehicle at that time.

PLEA AGREEMENT - 7

Mexico that she had the ability to track her electronic device that was left in BAUGHMAN's vehicle. Defendant was provided with direct access to this electronic device so she could track BAUGHMAN's vehicle in an effort to get the stolen drugs back. During Defendant's attempt to locate BAUGHMAN, she was texting with at least three other individuals she was directing to assist in locating BAUGHMAN's vehicle. In those text messages, Defendant sent particularized information about BAUGHMAN's identity and suspected location.

A short time later, a 911 caller reported a SUV-type vehicle shooting at another vehicle near the intersection of Nettleton and Rowan in Spokane. A residential Ring camera captured the incident on video. Responding law enforcement located seven 9mm shell casings in the area. Defendant's vehicle (a Range Rover SUV) was captured on a local license plate reader ("LPR") camera in the area of the shooting, just a few minutes both before and after the reported incident. Defendant's vehicle was identified via vehicle type and license plate number and the LPR captured an imagine where it appeared the vehicle was occupied by 2 people. Cell phone tower data confirmed Defendant's cellular phone in the area of the robbery location as well as in the area of the shooting location (Rowan and Nettleton). Other surveillance video showed a vehicle consistent with Defendant's vehicle traveling south in the area of Nettleton and Rowan with what appeared to be a muzzle flash out of the driver's side of Defendant's vehicle indicating the driver was shooting a handgun out the window. Cell phone tower records also showed at least 2 of the individuals Defendant was texting to locate BAUGHMAN were also in the area. Of note, Defendant's cell phone was in direct communication with the source of supply in Mexico at least 74 times that evening.

*Cooperating Defendant Statements*

Multiple cooperating defendants have also provided information on Defendant's participation in this organization. CD1 advised he/she had known Defendant for many years, and that CD1 had personal knowledge that Defendant was

PLEA AGREEMENT - 8

a main customer of the organization. CD1 explained that Defendant claimed to CD1 to be moving as much as $125,000 worth of drugs for the organization per week and Defendant felt she (Defendant) was not being adequately rewarded for her efforts by the organization. CD1 also advised that after search warrants were executed at the stash houses, the leader of the organization had Defendant break into the stash houses and locate a copy of the search warrants as well as collect items that may have been missed by law enforcement during the searches.

CD2 advised that he/she had personal knowledge Defendant was one of the organization's biggest customers and had been a customer for at least 6 months prior. CD2 estimated Defendant was receiving approximately ½ kilogram to 1 kilogram of heroin, 5,000 to 10,000 fentanyl pills, and 1 to 2 pounds of methamphetamine at a time from the organization. CD2 advised that Defendant would either come to the stash house to pick up her order, or it would be delivered to her at her residence.

CD3 advised that he/she had personal knowledge that Defendant was one of the organizations biggest customers. CD3 stated she was the "go to" individual if the leader needed a debt collected or enforcement action taken against others.

9. <u>The United States Agrees Not to File Additional Charges</u>:

The United States Attorney's Office for the Eastern District of Washington agrees not to bring additional charges against Defendant based on information in its possession at the time of this Plea Agreement that arise from conduct that is either charged in the Indictment or identified in discovery produced in this case, unless Defendant breaches this Plea Agreement before sentencing.

10. <u>United States Sentencing Guideline Calculations</u>:

Defendant understands and acknowledges that the United States Sentencing Guidelines (hereinafter "USSG" or "Guidelines") apply and that the Court will determine Defendant's advisory range at the time of sentencing, pursuant to the Guidelines. The United States and Defendant agree to the following Guidelines calculations:

PLEA AGREEMENT - 9

a. *Base Offense Level and Relevant Conduct*:

The parties agree and stipulate that more than 90,000 kilograms of converted drug weight was possessed with the intent to distribute, distributed, and attempted to be distributed in furtherance of the criminal activity jointly undertaken by Defendant and her co-conspirators; this amount was within the scope of Defendant's agreement; this amount was reasonably foreseeable to this Defendant in connection with the conspiracy; and this Defendant's relevant conduct for sentencing purposes should be calculated based upon this amount, pursuant to USSG §1B1.3.

Therefore, the parties agree and stipulate that, her base offense level is 38. *See* USSG §2D1.1(a)(5), (c)(2); USSG §1B1.3(a).

b. *Specific Offense Characteristics*:

The United States and Defendant agree to recommend a 2-level enhancement is appropriate as Defendant used violence, made a credible threat of violence, or directed the use of violence related to this offense. *See* USSG §2D1.1(b)(2). The United States will recommend a 2-level enhancement is appropriate as Defendant possessed a firearm connected to the offense. *See* USSG §2D1.1(b)(1). Defendant is free to oppose this enhancement.

The United States and Defendant agree to recommend no additional specific offense characteristics apply. *See generally* USSG §2D1.1(b).

Defendant acknowledges she is not eligible for any relief under "safety valve" provisions as she possessed a firearm and/or used violence connected to this offense. *See* USSG §2D1.1(b)(18); USSG §5C1.2; 18 U.S.C. § 3553(f).

c. *Role Adjustments*:

The United States and Defendant agree to recommend no role adjustment is warranted. *See* USSG §§3B1.1; 3B1.2.

d. *Acceptance of Responsibility*:

The United States will recommend that Defendant receive a three-level downward adjustment for acceptance of responsibility, pursuant to USSG §3E1.1(a),

PLEA AGREEMENT - 10

(b), if Defendant does the following:

    i.    accepts this Plea Agreement;

    ii.    enters a guilty plea at the first Court hearing that takes place after the United States offers this Plea Agreement;

    iii.    demonstrates recognition and affirmative acceptance of Defendant's personal responsibility for Defendant's criminal conduct;

    iv.    provides complete and accurate information during the sentencing process; and

    v.    does not commit any obstructive conduct.

The United States and Defendant agree that at its option and on written notice to Defendant, the United States may elect not to recommend a reduction for acceptance of responsibility if, prior to the imposition of sentence, Defendant is charged with, or convicted of, any criminal offense, or if Defendant tests positive for any controlled substance.

    e.    *Zero Point Offender Adjustment*:

Based upon Defendant's possession of a firearm and/or use of violence in connection with the offense, the United States and Defendant agree Defendant is not eligible for a 2-level reduction to her Base Offense Level pursuant to USSG §4C1.1.

    f.    *No Other Agreements*:

The United States and Defendant have no other agreements regarding the Guidelines or the application of any Guidelines enhancements, departures, or variances. Defendant understands and acknowledges that the United States is free to make any sentencing arguments it sees fit, including arguments arising from Defendant's uncharged conduct, conduct set forth in charges that will be dismissed pursuant to this Agreement, and Defendant's relevant conduct.

PLEA AGREEMENT - 11

g. *Criminal History*:

The United States and the Defendant have made no agreement and make no representations as to the Defendant's Criminal History Category, which shall be determined by the Court at sentencing after the Presentence Investigative Report is completed.

11. Length of Incarceration:

The United States agrees to recommend no more than 180 months. Defendant is free to recommend any legal sentence. Defendant acknowledges she cannot be sentenced to less than 120 months, the applicable mandatory minimum.

12. Supervised Release:

The United States and Defendant each agree to recommend 5 years of supervised release. Defendant agrees that the Court's decision regarding the conditions of Defendant's Supervised Release is final and non-appealable; that is, even if Defendant is unhappy with the conditions of Supervised Release ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or any term of Supervised Release.

The United States and Defendant agree to recommend that in addition to the standard conditions of supervised release imposed in all cases in this District, the Court should also impose the following conditions:

    a. that Defendant participate and complete such drug testing and drug treatment programs as the Probation Officer directs, but not to exceed six non-treatment drug tests per month during the imposed term of supervised release; and

    b. that Defendant's person, residence, office, vehicle, and belongings are subject to search at the direction of the Probation Officer.

PLEA AGREEMENT - 12

13. <u>Criminal Fine</u>:

The United States and Defendant agree to recommend the Court impose no criminal fine. Defendant acknowledges that the Court's decision regarding a fine is final and non-appealable; that is, even if Defendant is unhappy with a fine ordered by the Court, that will not be a basis for Defendant to withdraw Defendant's guilty plea, withdraw from this Plea Agreement, or appeal Defendant's conviction, sentence, or fine.

14. <u>Mandatory Special Penalty Assessment</u>:

Defendant agrees to pay the $100 mandatory special penalty assessment to the Clerk of Court for the Eastern District of Washington, at or before sentencing, pursuant to 18 U.S.C. § 3013.

15. <u>Payments While Incarcerated</u>:

If Defendant lacks the financial resources to pay the monetary obligations imposed by the Court, Defendant agrees to earn money toward these obligations by participating in the Bureau of Prisons' Inmate Financial Responsibility Program.

16. <u>Additional Violations of Law Can Void Plea Agreement</u>:

The United States and Defendant agree that the United States may, at its option and upon written notice to the Defendant, withdraw from this Plea Agreement or modify its sentencing recommendation if, prior to the imposition of sentence, Defendant is charged with or convicted of any criminal offense or tests positive for any controlled substance.

17. <u>Waiver of Appeal and Collateral Attack Rights</u>:

Defendant understands that Defendant has a limited right to appeal or challenge Defendant's conviction and the sentence imposed by the Court. Defendant expressly waives her right to appeal her conviction and/or sentence if the Court sentences Defendant to no more than 180 months of incarceration. If the Court sentences Defendant to more than 180 months of incarceration, Defendant may only appeal the substantive reasonableness of her sentence.

PLEA AGREEMENT - 13

Defendant also expressly waives Defendant's right to appeal any fine, term of supervised release, or restitution order imposed by the Court.

Defendant expressly waives the right to file any post-conviction motion attacking Defendant's conviction and sentence, including a motion pursuant to 28 U.S.C. § 2255, except one based on ineffective assistance of counsel arising from information not now known by Defendant and which, in the exercise of due diligence, Defendant could not know by the time the Court imposes sentence.

Nothing in this Plea Agreement shall preclude the United States from opposing any post-conviction motion for a reduction of sentence or other attack upon the conviction or sentence, including, but not limited to, writ of habeas corpus proceedings brought pursuant to 28 U.S.C. § 2255.

18.   Withdrawal or Vacatur of Defendant's Plea:

Should Defendant successfully move to withdraw from this Plea Agreement or should Defendant's conviction be set aside, vacated, reversed, or dismissed under any circumstance, then:

    a.   this Plea Agreement shall become null and void;

    b.   the United States may prosecute Defendant on all available charges;

    c.   the United States may reinstate any counts that have been dismissed, have been superseded by the filing of another charging instrument, or were not charged because of this Plea Agreement; and

    d.   the United States may file any new charges that would otherwise be barred by this Plea Agreement.

The decision to pursue any or all of these options is solely in the discretion of the United States Attorney's Office.

Defendant agrees to waive any objections, motions, and/or defenses Defendant might have to the United States' decisions to seek, reinstate, or reinitiate charges if a

PLEA AGREEMENT - 14

count of conviction is withdrawn, set aside, vacated, reversed, or dismissed, including any claim that the United States has violated Double Jeopardy.

Defendant agrees not to raise any objections based on the passage of time, including but not limited to, alleged violations of any statutes of limitation or any objections based on the Speedy Trial Act or the Speedy Trial Clause of the Sixth Amendment.

19. <u>Integration Clause</u>:

The United States and Defendant acknowledge that this document constitutes the entire Plea Agreement between the United States and Defendant, and no other promises, agreements, or conditions exist between the United States and Defendant concerning the resolution of the case.

This Plea Agreement is binding only on the United States Attorney's Office for the Eastern District of Washington, and cannot bind other federal, state, or local authorities.

The United States and Defendant agree that this Agreement cannot be modified except in a writing that is signed by the United States and Defendant.

<u>Approvals and Signatures</u>

Agreed and submitted on behalf of the United States Attorney's Office for the Eastern District of Washington.

Vanessa R. Waldref
United States Attorney

_____    12/12/23
Caitlin Baunsgard                Date
Assistant U.S. Attorney

I have read this Plea Agreement and have carefully reviewed and discussed every part of the agreement with my attorney. I understand and voluntarily enter into

PLEA AGREEMENT - 15

this. Furthermore, I have consulted with my attorney about my rights, I understand those rights, and I am satisfied with the representation of my attorney in this case. No other promises or inducements have been made to me, other than those contained in this Plea Agreement, and no one has threatened or forced me in any way to enter into this Plea Agreement. I am agreeing to plead guilty because I am guilty.

*Amy Riggs*                                    12/12/23
AMY KATHERIN RIGGS                Date
Defendant


I have read the Plea Agreement and have discussed the contents of the Plea Agreement with Defendant. The Plea Agreement accurately and completely sets forth the entirety of the agreement between the parties. I concur in Defendant's decision to plead guilty as set forth in the Plea Agreement. There is no legal reason why the Court should not accept Defendant's plea of guilty.

*Matthew Duggan*                              12-12-23
Matthew Duggan                         Date
Attorney for the Defendant

PLEA AGREEMENT - 16